Deborah CARLIN, Gwen Hecht, Victoria Simms, and Barbara Phillips, Plaintiffs,

v.

Tagaloa MANU, James M. Taylor, Joseph M. Brady, Eric White, Henry H. Hammond, Jr., Mario Reyes, and Ronald P. Beriault, Defendants.

Civil No. 98–372–HU.

United States District Court,
D. Oregon.

Aug. 19, 1999.

Gregory R. Mowe, Stoel Rives, Portland, OR, for plaintiffs Simms and Phillips.

Spencer M. Neal, Ginsburg & Neal, Portland, OR, for plaintiffs Carlin and Hecht.

Hardy Myers, Attorney General, Jan Peter Londahl, Assistant Attorney General, Oregon Department of Justice, Salem, OR, for defendants.

## OPINION AND ORDER

REDDEN, District Judge.

Magistrate Judge Hubel filed his Findings and Recommendation on July 7, 1999. The matter is now before me pursuant to 28 U.S.C. § 636(b)(1)(A) and Rule 72(b) of the Federal Rules of Civil Procedure. Section (b)(1)(A) authorizes a magistrate to hear and determine any pretrial matter pending before the court except certain specified "dispositive" motions. *United States v. Raddatz,* 444 U.S. 1066, 100 S.Ct. 1007, 62 L.Ed.2d 748 (1980). Review by the district court of the magistrate's determination of dispositive motions not excepted under § 636(b)(1)(A) is *de novo. Id.;*

*Bhan v. NME Hospitals, Inc.,* 929 F.2d 1404, 1414 (9th Cir.1991).

Plaintiffs have filed timely objections to Magistrate Hubel's Findings and Recommendation that the defendants' motion for summary judgment on the ground of qualified immunity be granted.

I have reviewed the file of this case and have read the authority cited by both sides. I have concluded that while precedent indicates that it is possible the Court of Appeals might in the future recognize a right by female inmates to be free from the presence of and viewing by male guards while they were being strip searched, that right is not now, and was not in February 1996, a "clearly established" one which would foreclose the defendants from qualified immunity.

In *Grummett v. Rushen,* 779 F.2d 491 (9th Cir.1985), a Fourteenth Amendment right to privacy case brought by male prison inmates based on allegations that prison policy allowed female correctional officers to view them in states of partial or total nudity while dressing, showering, being strip searched, or using toilet facilities, the court concluded that the inmates had not demonstrated that "restricted observations by members of the opposite sex [were] so degrading as to require intervention by this court." 779 F.2d at 495. The court noted that the observation was "infrequent and casual," or "observation at a distance." *Id.* at 494.

In *Michenfelder v. Sumner,* 860 F.2d 328 (9th Cir.1988), a male inmate alleged that visual body cavity searches performed within view of female guards was a violation of the Fourth and Eighth Amendments. The court rejected the claim, although it acknowledged a prisoner's limited right to bodily privacy. The Ninth Circuit applied *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) and recognized both a legitimate penological interest in providing equal employment opportunities to women prison guards and a security interest in deploying available staff effectively. *Id.* at 335. The court also noted that the guards' involvement in the strip searches was limited to observations made from a control booth's video monitors that provided a limited view.

In *Sepulveda v. Ramirez,* 967 F.2d 1413 (9th Cir.1992), the court denied qualified immunity to a male parole officer who walked into the bathroom stall where the plaintiff, a female parolee, was urinating as part of a required drug test. The court held that the plaintiff's "experience was far more degrading to [her] than the situation faced by the inmates in *Grummett,*" 967 F.2d at 1416, and also stated that the constitutional rights of parolees are "more extensive than those of inmates." *Id.*

In *Jordan v. Gardner,* 986 F.2d 1521 (9th Cir.1993)(en banc), however, the court held that a prison policy requiring male guards to conduct random, nonemergency, suspicionless clothed body searches on female prisoners constituted cruel and unusual punishment in violation of the Eighth Amendment. Because there was evidence that many of the female inmates had been sexually abused prior to incarceration, the court concluded that the searches, which involved squeezing and kneading of the breast, groin and thigh areas, were cruel because they inflicted psychological pain on the inmates. The court found them wanton because officials had acted with deliberate indifference to the harm such searches were likely to cause by implementing the searches despite warnings about their effect on the inmates. There was evidence that "physical, emotional and psychological differences between men and women 'may well cause women, and especially physically and sexually abused women, to react differently to searches of this type than would male inmates subjected to similar searches by women.'" 986 F.2d at 1525.

The court distinguished the district court's findings on the psychological trauma suffered by these women from the "momentary discomfort" caused by search procedures in other cases such as *Grummett.* 986 F.2d at 1526. The court said,

"The record in this case supports the postulate that women experience unwanted intimate touching by men differently from men subject to comparable touching by women. Several witnesses ... discussed how the differences in gender socialization would lead to differences in the experiences of men and women with regard to sexuality." *Id.* The court further concluded that the searches were unnecessary for Eighth Amendment purposes because prison security was not dependent upon such searches and they did not ensure equal employment opportunities for male guards.

The *Jordan* court distinguished *Grummett* and *Michenfelder* on the grounds that the frequency and scope of the searches in the latter cases were significantly less invasive and, more importantly, that the inmates in those cases had based their claims on invasion of privacy rather than cruel and unusual punishment.

In *Somers v. Thurman*, 109 F.3d 614 (9th Cir.1997), the court addressed the question of qualified immunity in a case in which the plaintiff, a male inmate, alleged that female guards had performed visual body cavity searches and watched him while showering. The court held that at the time of the challenged conduct, the prisoner had no clearly established constitutional right that was violated by the guards' conduct.

The court noted at the outset that "we have never held that a prison guard of the opposite sex cannot conduct routine visual body cavity searches of prison inmates ... [n]or have we ever held that guards of the opposite sex are forbidden from viewing showering inmates." 109 F.3d at 620. The court acknowledged that "[t]aken together," *Grummett, Michenfelder,* and *Sepulveda* might be read to "suggest that up close, frequent, and intentional viewings by guards of the opposite sex could violate a prisoner's privacy rights," but noted that in 1993, "an *en banc* panel of our court took us in a different direction." 109 F.3d at 620. The court then quoted from *Jordan:*

Whether such rights exist—*whether the inmates possess privacy interests that could be infringed by the cross-gender aspect of otherwise constitutional searches—is a difficult and novel question,* and one that cannot be dismissed lightly. But we cannot assume from the fact that the searches cause immense anguish that they therefore violate protected Fourth Amendment interests. Far from it, *our prior case law suggests that prisoners' legitimate expectations of bodily privacy from persons of the opposite sex are extremely limited.* See *Grummett v. Rushen,* 779 F.2d 491, 495–96 (9th Cir.1985)(pat-down searches of male inmates that included groin area by female guards do not violate Fourth Amendment); *Michenfelder,* 860 F.2d at 334 (occasional visual strip searches of male inmates by female guards do not violate Fourth Amendment).

\* \* \* \* \* \*

Although the inmates here *may have protected privacy interests* in freedom from cross-gender clothed body searches, such interests have not yet been judicially recognized.

*Somers,* 109 F.3d at 620 (emphasis added in *Somers* ).

█ Plaintiffs argue that the *Jordan* case conferred upon them a clearly established right which was violated by the defendants in this case. However, I do not find this argument persuasive. *Jordan* is distinguishable on several key points. The *Jordan* plaintiffs were subjected to sustained invasive searches of their breasts, buttocks and genital areas by the male guards; in this case, the male guards looked at the women but did not touch them. The district court in *Jordan* had made extensive findings that the plaintiffs had been sexually traumatized in the past and that there was a risk of substantial psychological harm to them as a result of the search procedures; the court distinguished this harm from the "momentary discomfort" suffered by the inmates in *Grummett* and *Michenfelder.* The *Jordan*

case involved a policy of random, suspicionless searches throughout the day—a policy, as the court said, which did not "inflict pain on a one-time basis, but instead [would] continue to inflict it indefinitely." This case, in contrast, involved an isolated event occasioned by the emergency removal of the female inmates to the male prison.

While there is authority in *Jordan* that women experience unwanted intimate touching by men differently from men subject to comparable touching by women, and thus that in cross-gender situations female inmates might have a stronger privacy interest than male inmates, this does not mean that the plaintiffs in this case had a "clearly established" constitutional right not to be viewed by male guards while being strip searched.

As the court said in *Somers,*

"Government officials are not required to anticipate subsequent legal developments, and ... cannot fairly be said to "know" the law unless it is sufficiently unmistakable from authoritative sources. It is not even enough to demonstrate that the constitutional norm relied on is the logical extension of principles and decisions already in the books."

109 F.3d at 621. Because observation by male guards during strip searches of female inmates was not clearly identified as unlawful conduct under existing law, I conclude that the defendants are entitled to qualified immunity.

Therefore, I ADOPT Magistrate Hubel's Findings and Recommendation filed July 7, 1999 (doc. # 43). Defendants' motion for summary judgment (doc. # 19) is GRANTED.

IT IS SO ORDERED.

## FINDINGS AND RECOMMENDATION

HUBEL, United States Magistrate Judge.

This matter is before the court on defendants' motion for summary judgment (# 19). For the following reasons, defendants' motion should be granted.

## BACKGROUND

Plaintiffs, inmates at the Oregon Women's Correctional Center ("OWCC"), filed this action alleging violations of their Fourth and Eighth Amendment rights in connection with skin searches performed on them in February 1996.

On February 7, 1996, Mill Creek began flooding the OWCC parking lot at 6:30 p.m. The flooding continued and at 10:30 p.m. Sonia Hoyt, Superintendent of OWCC, decided to evacuate OWCC and informed the inmates at 11:00 p.m. to prepare for evacuation.

Prison officials commenced the evacuation at 12:40 a.m. on February 8, 1996. Officials transported forty inmates who qualified for minimum custody to the Columbia River Correctional Institution ("CRCI") at 12:43 a.m. Officials transported the remainder of the OWCC inmates to the Oregon State Penitentiary ("OSP") between 1:14 a.m. and 3:30 a.m.: one hundred and six inmates to the OSP intensive management unit ("IMU"), twelve to the special management unit ("SMU"), and sixteen inmates to the disciplinary segregation unit ("DSU"). Hoyt also made staff assignments to cover both OSP and OWCC and assigned five staff members to OSP to assist with the security and intake of female inmates housed in the IMU, SMU, and DSU. The plaintiffs were among the sixteen inmates transferred to the DSU.

The parties do not dispute that inter-institutional transfers of inmates require skin searches in order to prevent the transfer of contraband or other materials between institutions. Palmateer Aff'd., ¶ 6. In accordance with this policy, female officers and staff performed the skin searches on the OWCC inmates entering the DSU, including the searches of plaintiffs. However, male OSP staff and officers were in the area where plaintiffs' skin searches were conducted while the skin searches were performed on plaintiffs. During the searches, plaintiffs testified that male guards and staff were present

walking-in and out or doing paperwork and were able to see plaintiffs' skin searches.[1]

Plaintiffs contend that the presence of male guards and staff during their skin searches violated plaintiffs' Fourth and Eighth Amendment rights. Plaintiffs seek monetary damages only. Defendants move for summary judgment on the basis of qualified immunity.

## STANDARDS

Summary judgment is appropriate if the court finds that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). There is no genuine issue of material fact where the nonmoving party fails "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir.1989).

All reasonable doubts as to the existence of genuine issues of fact must be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir.1976). The inferences drawn from underlying facts must be viewed in the light most favorable to the party opposing the motion. *Valandingham v. Bojorquez*, 866 F.2d 1135, 1137 (9th Cir.1989). Where different ultimate inferences can be drawn, summary judgment is inappropriate. *Sankovich v. Life Insurance Co. of North America*, 638 F.2d 136, 140 (9th Cir.1981).

■■■ Government officials performing discretionary functions receive qualified immunity from civil liability for damages so long as their conduct "does not violate clearly established statutory or constitu-

tional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir.1993). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640, 107 S.Ct. 3034. The determination of whether a constitutional right was clearly established at the time of the incident presents a pure question of law. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir.1993).

■■ "Qualified immunity is an affirmative defense; if the plaintiff proves that the right allegedly violated was clearly established, the burden shifts to the defendant official to prove that his or her conduct was reasonable even though it might have violated the law." *Hamilton v. Endell*, 981 F.2d 1062, 1066 (9th Cir.1992); *see also Camarillo*, 998 F.2d at 639; *Elder*, 975 F.2d at 1392. The threshold inquiry necessarily is whether the plaintiff has alleged the violation of a constitutional right at all. *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 1794, 114 L.Ed.2d 277 (1991); *Federal Deposit of Ins. Corp. v. Henderson*, 940 F.2d 465, 474 (9th Cir. 1991).

## DISCUSSION

I. *Fourth Amendment*

The court notes that because plaintiffs "chose to seek only monetary and not equitable relief, [the court] is not asked to determine what the law commands today,

---

1. Plaintiffs' testimony differs as to how many male guards and staff members were present during the searches, however, it is not disputed that male guards and staff were present in the area for at least some portions of plaintiffs' skin searches. Specifically, defendant Manu was present doing paperwork and defendant Reyes was also present and specifically identified. The other defendants testified that they did not see plaintiffs. However,

plaintiffs testified that there were a number of male guards in and out of the room during the searches. Defendants Taylor, Brady, White and Hammond were on duty and in the area. I do not reach the issue of whether plaintiffs have raised a material issue of fact with respect to each defendant's presence during each plaintiffs' skin search as I find that defendants are entitled to qualified immunity.

but only whether, at the time alleged, the asserted rights as [plaintiffs] describe[ ] them were clearly established constitutional principles." *Somers v. Thurman,* 109 F.3d 614, 616 (9th Cir.1997), *cert. denied,* 522 U.S. 852, 118 S.Ct. 143, 139 L.Ed.2d 90 (1997).

In 1996, the Supreme Court had not spoken on the issue of whether prisoners possess limited rights under the Fourth Amendment, nor has it to date. *See Grummett v. Rushen,* 779 F.2d 491, 494 (9th Cir.1985) ("The Supreme Court has not recognized that an interest in shielding one's naked body from public view should be protected under the rubric of the right of privacy...."). Furthermore, in 1984, the Supreme Court stated that

> A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order. We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security.

*Hudson v. Palmer,* 468 U.S. 517, 527–28, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). The Court went on to state that

> holding that [a prisoner] does not have a reasonable expectation of privacy enabling him to invoke the protections of the Fourth Amendment does not mean that he is without a remedy for calculated harassment unrelated to prison needs.... The Eight Amendment always stands as a protection against 'cruel and unusual punishments.'

*Id.* at 530, 104 S.Ct. 3194.

As the Ninth Circuit stated in 1997 with respect to cross gender visual body cavity searches conducted by female guards on male inmates "it is unclear from the dicta in *Hudson,* whether prisoners retain any rights cognizable under the Fourth Amendment against searches qua searches of their bodies, or whether the only safeguard against assertedly egregious searches in prison is the Eighth Amend-

ment." *Somers,* 109 F.3d at 618 (citing *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)).

What is clearer is that as early as 1988, the Ninth Circuit held that strip searches and visual body cavity searches of male prisoners conducted where female prison guards can observe the naked male prisoners do not violate the male prisoners' limited right to privacy under the Fourth Amendment. *Michenfelder v. Sumner,* 860 F.2d 328, 333–34 (9th Cir.1988).

In 1992, the Ninth Circuit examined the issue of a male parole officer observing a female parolee urinating as part of a required drug test. The court, in denying the parole officer qualified immunity, distinguished earlier cases by stating that "the constitutional 'rights of parolees are ... more extensive than those of inmates.'" *Somers,* 109 F.3d at 619 (quoting *Sepulveda v. Ramirez,* 967 F.2d 1413, 1416 (9th Cir.1992), *cert. denied, Appleby v. Sepulveda,* 510 U.S. 931, 114 S.Ct. 342, 126 L.Ed.2d 307 (1993)). In his dissent in *Sepulveda,* Judge O'Scannlain stated "[T]his circuit has never held that the Constitution is violated by the mere fact of a prison official viewing the unclothed body of an inmate of the opposite sex, and it has not even addressed the question of bodily privacy rights parolees may have in connection with drug testing." *Sepulveda,* 967 F.2d at 1418.

In 1993, the Ninth Circuit took up the issue of whether cross gender pat down searches of woman inmates performed by male guards violated the female prisoners' Fourth Amendment rights. The Ninth Circuit concluded

> we cannot assume from the fact that the searches cause immense anguish that they therefore violate protected Fourth Amendment interests. Far from it, our prior case law suggests that prisoners' legitimate expectations of bodily privacy from persons of the opposite sex are extremely limited.... Although the inmates here may have protected privacy interests in freedom from cross-gender

clothed body searches, such interests have not yet been judicially recognized. *Jordan v. Gardner*, 986 F.2d 1521, 1524–25 (9th Cir.1993)

As the Ninth Circuit stated in 1997, "it is highly questionable even today whether prison inmates have a Fourth Amendment right to be free … from viewing of their unclothed bodies by officials of the opposite sex." *Somers*, 109 F.3d at 622. This court has found no cases after *Somers*, establishing such a right. Because it is not clear to this day whether such a right exists, there is no question that a right to be free from viewing of plaintiffs' unclothed bodies by officials of the opposite sex was not established at the time of the skin searches in question in this matter.

Therefore, assuming all facts in the light most favorable to the plaintiffs, defendants did not violate plaintiffs' clearly established Fourth Amendment rights and defendants are entitled to qualified immunity on this issue. Accordingly, defendants' motion for summary judgment should be granted with respect to plaintiffs' Fourth Amendment claims.

## II. *Eighth Amendment*

■ " 'After incarceration, only the 'unnecessary and wanton infliction of pain' … constitutes cruel and unusual punishment forbidden by the Eighth Amendment.' " *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Ingraham v. Wright*, 430 U.S. 651, 670, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977)). To be actionable under the Eighth Amendment, an alleged deprivation must satisfy both an objective component, i.e., the deprivation must be sufficiently serious, and a subjective component, i.e., the offending conduct was wanton. *Farmer*, 511 U.S. 825, 114 S.Ct. at 1977; *LeMaire v. Maass*, 12 F.3d 1444, 1451 (9th Cir.1993); *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

In *Somers*, the Ninth Circuit examined the state of the law on cross-gender visual body cavity searches with respect to the Eighth Amendment. The male plaintiff in that case alleged that he was subject to visual body cavity searches by female officials and that female officials watched male inmates while they showered. Plaintiff also alleged that the female officials "pointed at him and joked among themselves during the searches and … showers, behavior [plaintiff] characterizes as gawking." *Somers*, 109 F.3d at 616. Despite these allegations, the court held that "even if we take Somers's [sic] allegations as true, they do not rise to the level of an Eighth Amendment violation. Cross-gender searches 'cannot be called inhumane and therefore do[ ] not fall below the floor set by the objective component of the [E]ighth [A]mendment.' " *Somers*, 109 F.3d at 622–23 (quoting *Johnson v. Phelan*, 69 F.3d 144, 150 (7th Cir.1995), *cert. denied*, 519 U.S. 1006, 117 S.Ct. 506, 136 L.Ed.2d 397 (1996)).

Plaintiffs point to *Jordan* in support of their proposition that the presence of male guards during plaintiffs' skin searches was violative of the Eighth Amendment. However, the circumstances in *Jordan*, were far more extreme than the circumstances at issue in this matter. The plaintiffs in *Jordan* were female inmates subjected to clothed body searches by male guards. Those searches involved male guards "[p]ush[ing] inward and upward when searching the crotch and upper thighs of the inmate," and "squeez[ing] and knead[ing] of the crotch and leg areas." *Jordan*, 986 F.2d at 1523. The male guards would then "search the breast area in a sweeping motion so that the breasts [were] flattened." *Id.* Furthermore, the plaintiffs in *Jordan* had pre-existing mental conditions that were severely exacerbated by the male guards' searches. *Id.* at 1526.

The conditions in *Jordan* are not present in this matter. Plaintiffs acknowledge that they were skin searched by female guards and do not allege that male officials or guards participated in the skin searches.

**1184**

The Ninth Circuit has stated that there are "psychological differences between men and women." *Jordan*, 986 F.2d at 1525. After discussing these differences, the Ninth Circuit stated that "the record in [*Jordan*] supports the postulate that women experience unwanted intimate touching by men differently from men subject to comparable touching by women." *Id.* at 1526. Therefore, the court upheld the district court's injunction preventing male prison guards from conducting random, non-emergency, suspiciousness, clothed body searches on female prisoners. *Id* at 1522.

However, as the court stated earlier, the factors present in *Jordan*, including the unwanted touching, are not present in this case. Taking *Somers*, *Jordan*, and *Johnson* together, the court cannot say that defendants' viewing of plaintiffs' skin searches, incidently to performing their duties, violated clearly established statutory or constitutional rights of which a reasonable person would have known in 1996. Therefore, even assuming the facts in the light most favorable to the plaintiffs, defendants did not violate plaintiffs' clearly established Eighth Amendment rights and defendants are entitled to qualified immunity on this issue. Accordingly defendants should be granted summary judgment with respect to plaintiffs' Eighth Amendment claims.

### CONCLUSION

Defendants' motion for summary judgment (# 19) should be granted.

### SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due July 23, 1999. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response to the objections is due August 6, 1999, and the review of the Findings and Recommendation will go under advisement on that date.

July 7, 1999.