**GATEWAY COMPANIES, INC., Plaintiff,**

v.

**OFFICEMAX, INC., Defendant.**

**No. 01 CIV. 6724(RO).**

United States District Court, S.D. New York.

Dec. 21, 2001.

**212**

LeBoeuf, Lamb, Greene & MacRae, Dennis Kerrigan, Esq., David Hetzel, Esq., Ronald Zdrojeski, Esq., New York City, for Plaintiff.

Jones, Day, Reavis & Pogue, Patrick G. Broderick, Esq., Edward Sebold, Esq., New York City, for Defendant.

## OPINION AND ORDER

OWEN, District Judge.

Following the souring of their "Strategic Alliance," plaintiff Gateway Companies, Inc. ("Gateway") initiated this breach of contract action against defendant Office-Max, Inc. ("OfficeMax") in July 2001 for failure to redeem some $20,000,000 of OfficeMax preferred stock, which Gateway had purchased as part of their alliance. OfficeMax moves to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6), or in the alternative, for an order staying the proceeding pending the outcome of an arbitration proceeding involving a related agreement. Gateway moves for summary judgment pursuant to Fed. R.Civ.P. 56. For the reasons that follow, both motions are denied.

Gateway manufactures and sells personal computers, and OfficeMax sells office products in its some 1,000 retail stores throughout the United States. On February 22, 2000, the two companies signed a Memorandum of Understanding, which outlined a five year "Strategic Alliance." This alliance was to involve the sales of products and services by Gateway in space to be set aside in OfficeMax's stores, cooperation in sales and services over the internet including the creation of Office-Max.com, and an investment by Gateway in OfficeMax. The Memorandum referred to all aspects of the "Strategic Alliance" together as "the transaction." On February 22, 2000, the two companies also signed a Master License Agreement ("MLA"), whereby OfficeMax was to lease space within all its stores nationwide[1] to Gateway, from which Gateway would sell its computer products. Unresolved disputes under the MLA would go to arbitration. The MLA allowed for Gateway to terminate the agreement "[d]uring the thirty day period immediately following June 30, 2001."

On April 28, 2000, the two companies signed a Share Purchase and Investor Rights and Co–Marketing Agreement ("SPA"), which referred to the MLA as a "Related Agreement." Under this agreement, Gateway purchased the following shares of OfficeMax stock: 3,076,923 Ser-

---

**1.** Those stores where the remaining portion of the lease was less than three years were excluded.

ies A Preference Shares ("A Shares") for $30,000,000; and 2,000,000 Series B Preferred Shares ("B Shares") for $20,000,-000 [2] with Gateway having the right to redeem the B Shares for cash and accrued dividends if by June 30, 2001 OfficeMax had not completed an expected initial public offering ("IPO") for OfficeMax.com.[3] The SPA is, however, not governed by the above arbitration clause, but rather provides that unresolved disputes must be litigated exclusively in New York State courts or the Federal District Court for the Southern District of New York, and that New York law is to be applied.

On February 23, 2000, Gateway had issued a press release which, among other things, announced its agreement with OfficeMax. In the press release, Gateway announced that the two companies expected to launch more than 1,000 Gateway stores within OfficeMax stores by the end of the first quarter of 2001, and "[a]s part of the transaction Gateway also will invest $50 million in OfficeMax convertible preferred stock...." In its quarterly report to the Securities and Exchange Commission ("SEC") for the first quarter of 2000, Gateway stated that it "announced an agreement with OfficeMax, Inc. that provides for the installation of a Gateway store inside of all OfficeMax locations in the United States. As a part of this transaction, [Gateway] invested $50 million in OfficeMax, Inc. convertible preferred stock on April 28, 2000."

The alliance seemed to get off to a good start with Gateway opening over 700 stores within OfficeMax stores in the first year, and purchasing the $50,000,000 in OfficeMax shares as set forth in the SPA. However, in early 2001, a new management team took over at Gateway and, for whatever reason, began to back off of Gateway's commitment to the alliance, specifically, the space commitment in all the OfficeMax stores. In February 2001, Gateway announced that it was reexamining its rental of space within OfficeMax stores, and shortly thereafter stopped opening new stores within OfficeMax and stopped staffing some of the stores already opened. On March 28, 2001, Gateway notified OfficeMax that it had decided to "exit the relationship" and "to phase out the Gateway locations in the OfficeMax stores." On April 4, 2001, OfficeMax sent a letter to Gateway detailing the ways Gateway had breached its agreements with OfficeMax, and notified Gateway that under the terms of the MLA regarding default it was terminating all of its agreements with Gateway, including the MLA and the SPA. The letter further notified Gateway that, due to Gateway's breaches, it would not be entitled to the benefits associated with the A or B Shares. On June 30, 2001, Gateway gave formal notice that it was terminating the major contracts with OfficeMax as allowed in the MLA. Dispute resolution proceedings have been initiated as set forth in the MLA and the dispute is now in arbitration.

**2.** The B Shares were to be convertible into stock that tracked the performance of an e-commerce business (OfficeMax.com) that OfficeMax was to set up.

**3.** This redemption right is spelled out in an amendment to OfficeMax's corporate charter also dated April 28, 2000. The amended charter further provided in relevant detail that: (1) if OfficeMax failed to complete the IPO by June 30, 2001, then within twenty days of that date it was to give notice to Gateway of its right to redeem the B Shares; (2) Gateway could then exercise its right of optional redemption by sending a notice to OfficeMax specifying the redemption date, which could not be earlier than twenty business days after OfficeMax received notice; and (3) OfficeMax would then be required to pay the stated value of the shares plus unpaid dividends by the redemption date or pay interest at the rate of 2% above the prime rate.

For whatever reason, which remains to be seen, OfficeMax, thereafter, failed to go forward with the IPO for OfficeMax.com by the June 30, 2001 deadline. Thus, the amended charter required OfficeMax to issue the B Shares Redemption Notice (for the $20,000,000) by July 20, 2001. On July 20, 2001, OfficeMax sent an e-mail to Gateway suggesting that the Redemption Notice be deferred for a short time in light of the settlement discussions going on between the companies and asking that it be contacted promptly if Gateway disagreed with this approach. Gateway did not respond to the e-mail, but on July 23, 2001 sent written notice to OfficeMax of its intent to exercise its redemption rights of the B Shares, and fixed a redemption date of August 20, 2001, which was 20 business days after the July 20, 2001 deadline for the Redemption Notice. On July 24, 2001, OfficeMax issued its B Shares Redemption Notice to Gateway, which had an effective date of July 20, 2001. In that notice, OfficeMax stated that it would subtract $19,000,000 from the "Redemption Price," which included the $20,000,000 plus accrued unpaid dividends, as OfficeMax's settlement proposal to reconcile "the parties' respective obligations in connection with the parties' strategic alliance." Also on July 24, 2001, Gateway filed the current action claiming anticipatory repudiation on the part of OfficeMax regarding the redemption of the B shares. The action was filed 27 days (19 business days) before the date for redemption. To date, OfficeMax has still not redeemed the B Shares held by Gateway, and while not disputing Gateway's right to redemption, OfficeMax asserts in bar that it would be entitled to a recoupment for damages caused by Gate-

way under the MLA, which it anticipates being awarded in arbitration.

■ OfficeMax's motion to dismiss, which argues for dismissal because the redemption date had not yet passed at the time the complaint was filed, is denied. In deciding a motion to dismiss under Fed. R.Civ.P. 12(b)(6), all factual allegations in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *See Friedl v. City of New York,* 210 F.3d 79, 83 (2d Cir.2000). "Dismissal is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (internal citations omitted). The court normally does not consider materials outside the pleadings in ruling on a motion to dismiss. *Id.* Gateway filed this suit prior to the August 20, 2001 redemption date for the B Shares alleging OfficeMax's anticipatory repudiation, and, although no materials have been received or considered on this, it is now part of the woodwork that the redemption date has long since passed without OfficeMax redeeming Gateway's shares. Is that not sufficient to allow Gateway's cause of action to continue?[4]

■ Accordingly, Gateway's motion for summary judgment is also denied. In deciding a motion for summary judgment under Fed.R.Civ.P. 56, all evidence is construed in the light most favorable to the non-moving party, and summary judgment will only be granted where the record shows "that no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law." *Wood-*

---

4. While Gateway pleads anticipatory repudiation as to OfficeMax's expected failure to redeem its stock, arguably, Gateway may have been the first repudiator by breaching the MLA in not going into all the OfficeMax stores and starting to withdraw from those it was already in, which might in turn have caused OfficeMax's IPO to founder as a fallout from it.

*ford v. Community Action of Greene County, Inc.,* 268 F.3d 51, 54 (2d Cir.2001).

The parties agree that Gateway has a right to redemption of the B Shares. However, while Gateway claims that it has an absolute and unconditional right to full redemption, OfficeMax claims that the purchase by Gateway of the B Shares was part of a series of related agreements, and is, therefore, part of the same "transaction" giving rise to OfficeMax's alleged damages under the MLA. Thus, OfficeMax claims a right to recoupment as an offset against any money owed to Gateway.

"Recoupment means a deduction from a money claim through a process whereby cross demands arising out of the same transaction are allowed to compensate one another and the balance only to be recovered." *In re McMahon,* 129 F.3d 93, 96 (2d Cir.1997) (internal citations omitted). Recoupment must arise out of the same transaction as the claim. *Id.* "Recoupment is in the nature of a defense.... Recoupment permits a transaction which is made the subject of suit by a plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole." *In re Malinowski,* 156 F.3d 131, 133 (2d Cir. 1998) (internal citations omitted).

The issue here is whether the agreement by OfficeMax to have Gateway sell out of its stores and Gateway's agreement to contemporaneously put money into OfficeMax are "the same transaction." Although they are two distinct agreements, they are clearly related as part of the parties' "Strategic Alliance," and both were specifically referred to in the Memorandum of Understanding signed by the parties as being part of the proposed transaction. Furthermore, the SPA specifically refers to the MLA as a "Related Agreement." Gateway itself, in its February 23, 2001 press release, linked the opening of its stores within OfficeMax stores with the stock purchase stating, "[a]s part of *the transaction* Gateway also will invest $50 million in OfficeMax convertible preferred stock..." (emphasis added). Again, in its quarterly report to the SEC for the first quarter of 2000, Gateway stated that it "announced an agreement with OfficeMax, Inc. that provides for the installation of a Gateway store inside of all OfficeMax locations in the United States. As a part of *this transaction,* [Gateway] invested $50 million in OfficeMax, Inc. convertible preferred stock on April 28, 2000" (emphasis added). Clearly, the two agreements were considered by the parties to be one transaction.

This conclusion is not affected by the fact that the MLA provides for dispute resolution through arbitration and the SPA through the courts. Accordingly, OfficeMax is entitled to recoupment for any damages an arbitrator awards it against Gateway under the MLA. Summary judgment is, therefore, denied on this record because any amount of recoupment to be allowed is an issue of fact which awaits the arbitrator's decision.

Given the foregoing, OfficeMax's motion for a stay pending the decision of the arbitrator is moot.

So ordered.